IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-01514-MEH-CBS

CHRISTOPHER E. SKODMIN,

      Plaintiff,

v.

FRED OLIVA, Director of Corrections,
DEPUTY SHERIFF J. SIMPLEMAN #03015, and
DEPUTY SHERIFF PACHECO #50072,

      Defendants.

---

## ORDER GRANTING DEFENDANTS' MOTION
## FOR SUMMARY JUDGMENTAND DISMISSING CASE

---

**Entered by Michael E. Hegarty, United States Magistrate Judge.**

      Before the Court is Defendants' Motion for Summary Judgment. The matter is fully briefed, and oral argument would not materially assist the Court in adjudicating this motion. Based upon the law and arguments presented, together with the entire record herein, the Defendants' request for summary judgment will be **granted**.

## BACKGROUND

      As set forth in the pleadings in this case, on the evening of March 6, 2005, the Plaintiff and another inmate, Orlando Thompson, had a "heated" argument regarding an unknown subject or incident. The following morning, when the Plaintiff was taken out of his cell to go to see the nurse, Mr. Thompson, an inmate tier clerk present in the area, ran towards the Plaintiff, taking a swing at the Plaintiff. Defendant Pacheco, who was escorting the Plaintiff, placed himself between the Plaintiff and Thompson, but Thompson kept trying to get around Defendant Pacheco. Defendant Simpleman

then entered the scene to assist Defendant Pacheco, and physically moved the Plaintiff out of the way.

Plaintiff allegedly struck a doorway frame, and broke his arm above the elbow in two places.

From the Final Pretrial Order entered in this case on September 15, 2006, the Plaintiff's four

claims in this matter are as follows[1]:

> The Plaintiff claims that on March 7, 2005, Defendants Jared Simpleman and David Pacheco violated the Fourteenth Amendment when they removed him from the protective custody unit of the jail (where he was assigned because he is a homosexual), without assuring his continued segregation from general population inmates denied him equal protection of the laws because of his sexual orientation.

> The Plaintiff also claims that the Defendants violated the Eighth Amendment of the United States Constitution when they pushed the Plaintiff out of the way in an effort to prevent a fellow inmate from attacking the Plaintiff.

> In addition, the Plaintiff alleges that Defendant Fred Oliva failed to implement or institute a policy which effectively segregated inmates in protective custody from contact with inmates in the general population.

> Finally, the [P]laintiff also asserts that Defendant Fred Oliva has supervisory liability because he permitted the deputy sheriffs under his command to assign tier clerks to the various housing units of the jail without regard to their classification.

FINAL PRETRIAL ORDER, Docket #71.

Defendants challenge these claims in their Motion for Summary Judgment, arguing that

Plaintiff has failed to demonstrate a genuine issue of material fact that his constitutional rights were

violated and also arguing that they are entitled to qualified immunity on these claims. Plaintiff

strenuously disputes the Defendants' motion.

---

[1]Claims are governed by the pretrial order. *See* FED. R. CIV. P. 16(e); *McKenzie v. Benton*, 388 F.3d 1342, 1349 n.2 (10th Cir. 2004).

**DISCUSSION**

**I.     Standard of Review.**

A motion for summary judgment serves the purpose of testing whether a trial is required. *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003).  The Court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A fact is material if it might affect the outcome of the suit under the governing substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  The non-moving party has the burden of showing that there are issues of material fact to be determined. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The moving party bears the initial responsibility of providing to the Court the factual basis for its motion and identifying the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which reveal that there are no genuine issues as to any material facts, and that the party is entitled to summary judgment as a matter of law.  *Id.* at 323; *Maldonado v. City of Altus*, 433 F.3d 1294, 1302 (10th Cir. 2006).  If the movant properly supports a motion for summary judgment, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing a genuine factual issue for trial.  *Hysten v. Burlington Northern and Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002); Fed. R. Civ. P. 56(e).  These specific facts may be shown "'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves.'"  *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324).   "[T]he content of summary judgment evidence must be generally admissible and . . . if that evidence is presented in the form of an affidavit, the Rules of Civil

Procedure specifically require a certain type of admissibility, *i.e.*, the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). Finally, "[t]he court views the record and draws all favorable inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1256 (10th Cir. 2005).

Because the Plaintiff is proceeding without counsel, the Court must construe his pleadings and other filings liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be the *pro se* litigant's advocate. *Hall*, 935 F.2d at 1110.

## II.    Merits of Plaintiff's Claims.

### A.    Claims One and Two.

#### 1.    Determining Individual or Official Capacity Claims.

As stated in the Final Pretrial Order, Plaintiff's first and second claims are made against Defendants Pacheco and Simpleman. Plaintiff does not clearly designate whether these Defendants are being sued in their official or individual capacities; however, his pleadings indicate he is seeking monetary damages as his sole remedy. In an official capacity suit against a local government official, the real party in interest is not the named official, but the local governmental entity. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Myers v. Oklahoma County Bd. of County Com'rs*, 151 F.3d 1313, 1316 n.2 (10th Cir. 1998). Defenses such as qualified immunity or immunity from compensatory damages are not available to the political subdivision. *See Owen v. City of Independence,* 445 U.S. 622 (1980).

This Court must analyze both the substance of the pleadings and the course of the proceedings

to determine whether the suit is for official or individual liability. *See Pride v. Lamb*, 997 F.2d 712, 715 (10th Cir. 1993). Plaintiff's request for monetary damages, and not injunctive and declaratory relief, is not a strong indicator as to whether the suit seeks both personal and official liability. *Cf. id*. However, the Defendants have raised a qualified immunity defense, and other individual defenses to Plaintiff's claims, which would support a finding that the Plaintiff's suit as to these two Defendants is an individual capacity suit. *See id.* at 715-16. Additionally, "only those municipal officials who have 'final policymaking authority' may by their actions subject the government to § 1983 liability." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988). State law, as reflected in statutes, ordinances, regulations, city charters or other similar compilations, determines who has "final policy making authority." *Id.* Nothing in the record evidences that Defendants Pacheco or Simpleman have final policy making authority. Accordingly, a determination that the Plaintiff has sued these Defendants solely in their individual capacities is warranted.

### 2.    Claims One and Two.

Under his first and second claims, the Plaintiff alleges violations by Defendants Pacheco and Simpleman of his Eighth and Fourteenth Amendment rights to safety and bodily integrity, together with allegations of an equal protection violation. In his filings, the Plaintiff references that he was a pretrial detainee at the time of the incident in question. As a pretrial detainee, Plaintiff's claims alleging a failure to protect as well as those alleging excessive force by governmental actors are technically governed by the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment. *See Lopez v. LeMaster*, 172 F.3d 756, 759 n.2 (10th Cir. 1999) (failure to protect claim); *Meade v. Grubbs*, 841 F.2d 1512, 1527 (10th Cir. 1988) (excessive force claim). However, the standards for analysis to be applied are the same, whether Plaintiff's claims are evaluated under

the Eighth or Fourteenth Amendments. *See id.*; *see also, e.g., Thompson v. Hamilton*, No. 97-6084, 1997 WL 639320, *1 (10th Cir. Oct. 14, 1997); *cf. Berry v. City of Muskogee, Okla.*, 900 F.2d 1489, 1494 (10th Cir. 1990) (where government conduct is constrained by an explicit textual source of constitutional protection - such as the Eighth Amendment's prohibition against cruel and unusual punishment - "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide . . . .").

### a.    Failure to Protect.

To overcome the defense of qualified immunity, the Plaintiff must establish a constitutional violation. With regard to Plaintiff's claim that Defendants Simpleman and Pacheco failed to protect him, Plaintiff must demonstrate that he was incarcerated under conditions posing a substantial risk of serious harm, the objective component of the claim, and that Defendants were deliberately indifferent to his safety, the subjective component of the claim. *See Verdecia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003). The Supreme Court has defined the deliberate indifference standard as equating to "'recklessness,' in which 'a person disregards a risk of harm of which he is aware.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 836-37 (1994)). Deliberate indifference requires more than a showing of simple, or even heightened, negligence. *Id.* In addition, "prison officials who actually knew of a substantial risk to inmate health and safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844; *Barney v. Pulsipher*, 143 F.3d 1299, 1311, n.12 (10th Cir. 1998).

Plaintiff has asserted that:

1.    Denver's jail classification plan requires absolute segregation of inmates in different "classification groups." *See* PLAINTIFF'S RESPONSE TO DEFENDANTS MOTION FOR SUMMARY JUDGMENT, Docket #58, p. 4; PLAINTIFF'S REPLY SUMMARY BRIEF IN SUPPORT OF RULE 56(E), Docket #64; PLAINTIFF'S

–6–

RESPONSE TO DEFENDANTS SURREPLY OPPOSING SUMMARY JUDGMENT, Docket #79, p. 2;

2.   Inmate Orlando Thompson's classification was X06, a classification for inmates accused of infamous or heinous crimes. *See* PLAINTIFF'S RESPONSE TO DEFENDANTS MOTION FOR SUMMARY JUDGMENT, Docket #58, p. 4;

3.   Plaintiff's classification was X05, based upon his identification as a homosexual. *Id.*;

4.   Officers Pacheco and Simpleman knew of the tension between the Plaintiff and Inmate Thompson. *See* PLAINTIFF'S RESPONSE TO DEFENDANTS SURREPLY OPPOSING SUMMARY JUDGMENT, Docket #79; and

5.   Officers Pacheco and Simpleman failed to follow the classification plan requiring complete separation between the Plaintiff and Inmate Thompson when taking the Plaintiff to see the nurse, resulting in harm to the Plaintiff. *See* PLAINTIFF'S RESPONSE TO DEFENDANTS MOTION FOR SUMMARY JUDGMENT, Docket #58; PLAINTIFF'S REPLY SUMMARY BRIEF IN SUPPORT OF RULE 56(E), Docket #64; PLAINTIFF'S RESPONSE TO DEFENDANTS SURREPLY OPPOSING SUMMARY JUDGMENT, Docket #79 .

Defendants contend that the Plaintiff has not properly supported these factual assertions under Fed.R.Civ.P. 56(e). However, Plaintiff has supplied an Affidavit under which he attests that he was informed of a special management unit policy that he would be allowed out of his cell with only inmates classified X05. *See* PLAINTIFF'S SUMMARY BRIEF IN SUPPORT OF RULE 56(E) [SIC], Docket #64, attached Second Affidavit. Plaintiff also indicates that he sought discovery of the official County policy, and was informed that there was no written policy, but was instead handled through classroom instruction. *See* PLAINTIFF'S SUMMARY BRIEF IN SUPPORT OF RULE 56(E) [SIC], Docket #64, p. 4. Accordingly, there appears to be no dispute that there exists some type of unwritten County policy concerning segregation of inmates in different classification groups. Whether absolute segregation was a requirement and whether Defendants Pacheco and Simpleman were aware of the policy is not clear, but the lack of this information does not present a material factual dispute rendering disposition

of this claim improper.  The fact that there may be an unwritten policy, and that Defendants Pacheco and Simpleman may or may not have known of and disregarded it, could present a genuine issue of material fact to overcome summary judgment as to whether these Defendants disregarded a risk of harm of which they were aware in connection with determining deliberate indifference.  However, in determining whether a violation of Plaintiff's constitutional rights has occurred in this incident, the Court must also view whether these Defendants responded reasonably to the risk, even if the harm ultimately was not averted.

By Plaintiff's own repeated admissions in his pleadings and responses to the Defendants' summary judgment motion, Defendant Pacheco interceded on behalf of the Plaintiff to stop the attack by inmate Thompson by placing himself between Thompson and the Plaintiff .  Additionally, the Plaintiff has admitted that Defendant Simpleman acted to physically remove the Plaintiff from the situation while assisting Defendant Pacheco.  Plaintiff does claim that Defendant Simpleman utilized excessive force in pushing him out of the way, but that is a separate individual claim.  The bottom line here is the record establishes that when inmate Thompson sought to physically confront the Plaintiff, these Defendants responded in a reasonable manner, *i.e.*, to keep Thompson away from the Plaintiff and to get the Plaintiff out of harm's way, even though injury occurred to the Plaintiff in the process. Accordingly, although the Defendants' actions may possibly have been contrary to policies, procedures, and practices in handling inmate segregation, under the uncontroverted facts established in the record herein, the Court believes that it is possible to hold as a matter of law that Defendants Pacheco and Simpleman responded in a constitutional manner.  They quickly assessed the situation, responded to it in a focused and immediate manner, and quashed the confrontation within moments. Therefore, because Plaintiff has not established a violation of the Constitution, Defendants' request

– 8 –

for summary judgment on this claim is granted, and this claim is dismissed.

### b.    Excessive Force.

Plaintiff alleges that in pushing him out of the way in connection with the incident involving inmate Thompson, Defendant Simpleman used excessive force against him in violation of his constitutional rights. When prison officials are accused of using excessive force, the central inquiry is whether the force was applied in either a good-faith effort to maintain or restore discipline, or whether the acts were taken maliciously and sadistically to injury the prisoner. *See Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992) (relying on *Hudson v. McMillian*, 503 U.S. 1 (1992) and *Whitley v. Albers*, 475 U.S. 312 (1986)). This inquiry is guided by the wide discretion given to prison officials in the administration of internal prison practices. *See Whitley*, 475 U.S. at 321-22 (giving "'wide-ranging deference'" to prison security measures "taken in response to an actual confrontation with riotous inmates"). Not every touch or contact, regardless of how offensive it may appear through the tranquil lens of hindsight violates the Eighth Amendment. *See Hudson*, 503 U.S. 9-10. To balance the deference afforded prison officials with the rights of inmates, courts weigh several factors, including (1) the need for force, (2) the relationship between that need and the amount of force used, (3) the threat reasonably perceived by prison officials, and (4) any efforts made to temper the severity of a forceful response. *See Whitley*, 475 U.S. at 321.

The basic facts are not disputed by the parties: Defendant Simpleman heard the altercation, ran to the area, and saw Deputy Pacheco trying to keep the Plaintiff and Mr. Thompson separated. Defendant Simpleman pushed the Plaintiff out of the way. Plaintiff ended up with a broken arm. The parties differ, however, on the appropriateness of Defendant Simpleman's actions in pushing the Plaintiff out of the way. Plaintiff contends that Defendant Simpleman did not need to push him, and

that he exceeded the amount of force that was justified under the circumstances to get him out of the way. Plaintiff argues that Defendant Simpleman could have given a verbal warning or command for him to move instead. By citation and quotation from seminal cases on this subject, Defendant Simpleman argues that he had to act quickly and decisively, and acted in a good-faith effort to restore discipline.

Although the Court views the facts in the light most favorable to the party opposing summary judgment, *see Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.*, 938 F.2d 1105, 1110 (10th Cir. 1991), even assuming the facts are as the Plaintiff alleges, a reasonable jury could not find that Defendant Simpleman acted "maliciously and sadistically to inflict unnecessary and wanton suffering." Additionally, if there is a legitimate penological purpose behind the defendants' alleged conduct, the actions of the officer by themselves are not sufficient to evidence a malicious and sadistic state of mind. *See Giron v. Corrections Corp. of America*, 191 F.3d 1281, 1290 (10th Cir. 1999).

As demonstrated by the discussion of Plaintiff's allegations as set forth above, a legitimate penological purpose was evident behind the conduct of Defendant Simpleman, *i.e.*, assisting both the Plaintiff and Defendant Pacheco and restoring order to the affected area. Plaintiff relies solely on the outcome of the actions of the Defendant to demonstrate that excessive force was used, and supplies no evidence or well-pled facts from which a reasonable jury could find that Defendant Simpleman acted maliciously and sadistically to cause harm.

In this case, there is undisputed evidence that Defendant Pacheco had directed both the Plaintiff and Mr. Thompson to stop arguing, but that they did not. Since the Plaintiff did not heed the directive of Defendant Pacheco, the potential of him heeding a verbal warning from Defendant Simpleman to get out of the way was diminished. In the "heat of the moment," Defendant Simpleman

took the most direct action available, which was to physically move the Plaintiff out of the way.  *See Hudson,* 503 U.S. at 7 (in the context of force used to quell a prison disturbance, prison official must often act "'in haste, under pressure, and frequently without the luxury of a second chance.'")(quoting *Whitley*, 475 U.S. at 320).  Plaintiff did receive an injury to his arm as result, however, lesser action by Defendant Simpleman may not have been as swift or effective. Accordingly, the undisputed facts in the record establish that Defendant Simpleman's conduct did not rise to the level of a constitutional violation.  Plaintiff's allegations fail as a matter of law, because he cannot demonstrate that Defendant Simpleman "acted maliciously and sadistically for the very purpose of causing harm rather than in a good-faith effort to maintain or restore discipline."  *Mitchell v. Maynard*, 80 F.3d 1433, 1440 (10th Cir. 1996).

Accordingly, with regard to Plaintiff's allegations and claims of excessive force, the evidence fails to present a sufficient disagreement to require submission to a fact finder; it is so one-sided that one party must prevail as a matter of law.  *See generally Anderson,* 477 U.S. at 251-52. Plaintiff's claim shall therefore be dismissed.

### c.   Equal Protection.

In his first claim, Plaintiff makes a conclusory allegation that Defendants Pacheco and Simpleman violated his equal protection rights during the incident involving inmate Thompson. No elaboration or clarification of this allegation is contained within the record.  The Equal Protection Clause does not require that all people be treated identically.  *Hendking v. Smith*, 781 F.2d 850, 851 (11th Cir. 1986) (quoting *Zeigler v. Jackson*, 638 F.2d 776, 779 (5th Cir. 1981); *see also United States v. MacCollom*, 426 U.S. 317 (1976) (neither the Equal Protection Clause of the Fourteenth Amendment, nor the counterpart equal protection requirement embodied in the Fifth Amendment,

guarantees "absolute equality or precisely equal advantages"). With regard to an equal protection claim, the Plaintiff must demonstrate that he was treated differently as compared to a similarly situated person. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Plaintiff has failed to allege any facts or facts from which it can be inferred to demonstrate that he was treated differently. Additionally,

> A plaintiff in an equal protection action has the burden of demonstrating discriminatory intent. It is not necessary to demonstrate that the challenged action was taken solely for discriminatory purposes; it is necessary only to prove that a discriminatory purpose was a motivating factor.

*Watson v. City of Kansas City, Kan.*, 857 F.2d 690, 694 (10th Cir. 1988) (citations omitted). Plaintiff has failed to provide any factual basis to demonstrate a discriminatory intent by Defendants Pacheco and Simpleman. Accordingly, any such claim would fail.

### B.   Claims Three and Four.

Plaintiff contends that Defendant Oliva, the Director of Corrections and supervisor of the deputy sheriffs at the Denver County Jail, has violated his constitutional rights by failing to implement or institute an effective policy on inmate segregation and by failing to adequately train and supervise his deputies with regard to inmate segregation. Plaintiff has not clearly indicated whether or not he has sued Defendant Oliva in an official capacity or in his individual capacity. Plaintiff has, however, alleged that Defendant Oliva is a policymaker, and the Defendant has not disputed this allegation. As noted previously, in an official capacity suit against a local government official, the real party in interest is not the named official, but the local governmental entity. *See Hafer*, 502 U.S. at 25; *Myers*, 151 F.3d at 1316 n.2. In this case, the local government entity would ostensibly be the County of Denver, based on the fact that the scene of the incident is alleged to have been the Denver County Jail.

-12-

Liability does not attach to a governmental entity pursuant to § 1983 for the acts of its employees unless a plaintiff can show: (1) that the employee committed a constitutional violation, and (2) a policy or custom was the moving force behind the constitutional violation. *See Myers*, 151 F.3d at 1317. There can be no municipal liability without a predicate constitutional violation by an individual officer. *See Trigalet v. City of Tulsa, Oklahoma*, 239 F.3d 1150, 1154 (10th Cir. 2001). The "moving force" in this case was the actions of Defendants Pacheco and Simpleman, and their actions have been found not to violate the constitution. Plaintiff's allegations that his injuries could have been avoided if there were different policies in place or adequate training are insufficient as a matter of law to establish the deliberate indifference necessary to demonstrate municipal liability. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989). Accordingly, if the Plaintiff is seeking to impose liability upon Defendant Oliva in his official capacity, his claims in this regard fail and must be dismissed.

With regard to individual liability against Defendant Oliva because he is a public official, he may be held liable in two situations: (1) when his own acts violate the federal constitutional rights of an inmate, and (2) when one of his subordinates violates an inmate's federal rights and there exists an affirmative link between that act and the supervisor. Once again, in this regard, the Plaintiff has brought his claims under the Eighth and Fourteenth Amendments. Because the government conduct is constrained by an explicit textual source of the Eighth Amendment's prohibition against cruel and unusual punishment, this Court is guided in its analysis by that constitutional amendment. *cf. Berry*, 900 F.2d at 1494. Under this analysis, in a claim that officials failed to prevent harm, an inmate must show, first, that he "is incarcerated under conditions posing a substantial risk of serious harm," and, second, that officials had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834 (quoting

*Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).  "Thus, the deliberate indifference standard in a prison-conditions case is a 'subjective' and not an 'objective' requirement.  That is, a prison official is liable only if the 'official knows of and disregards an excessive risk to inmate health and safety.'  It is not enough to establish that the official should have known of the risk of harm."  *Barney* , 143 F.3d at 1310 (quoting *Farmer*, 511 U.S. at 837).

To be held liable as a supervisor under § 1983, the official "must have participated or acquiesced in the constitutional deprivations of which complaint is made."  *Meade*, 841 F.2d at 1528 (internal quotations marks and citation omitted).  An "affirmative link" must exist "between the [constitutional] deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise."  *Id*. at 1577.

Supervisory liability does not apply in this case, because as the analysis in the preceding section concerning the claims against Defendants Pacheco and Simpleman demonstrates, there has been no constitutional violation by Defendants Pacheco and Simpleman which can be affirmatively linked to Defendant Oliva as their supervisor.  *See Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993) (when a subordinate's conduct is not unconstitutional, it follows that a supervisor did not act unconstitutionally in failing to prevent their conduct).  Therefore, any claim that Defendant Oliva violated the Eighth Amendment must be premised upon his independent deliberate indifference.

As noted, Plaintiff's allegations against Defendant Oliva are that he failed in his responsibility to train the deputies under his supervision and in failing to implement or institute an effective policy on inmate segregation.  Such a claim may state a cause of action in tort for negligence, i.e., that Defendant Oliva had a duty to train his subordinates and implement or institute effective policies, and breached that duty.  However, negligence is not the standard used to support a claim of constitutional

deprivation. Deliberate indifference requires "an act or omission purposefully committed by a person who must have realized that the conduct was unnecessarily dangerous or which conduct was done heedlessly or recklessly, without regard to the consequences, or without regard to the rights and safety of others." *Zuchel v. City and County of Denver*, 997 F.2d 730, 735 (10th Cir. 1993). A finding of deliberate indifference in this instance would require evidence that the need for a policy other than that which was in place (as Plaintiff has asserted that the Denver jail has an unwritten classification plan which requires absolute segregation of inmates in different "classification groups") and the need for more or different training was so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that Defendant Oliva can reasonably be said to have been deliberately indifferent to the need. *See generally City of Canton*, 489 U.S. at 390. Deliberate indifference may be satisfied when there is actual or constructive notice that action or failure to act is substantially certain to result in a constitutional violation, and the notice is consciously or deliberately disregarded. *Barney*, 143 F.3d at 1307-08. There is no evidence, nor are there facts or facts from which it can be inferred in the record, that Defendant Oliva would have been alerted to any inadequacies in the policies or training that he provided at the facility where the Plaintiff was housed. The most the Plaintiff has been able to show is that he disagrees with the sufficiency of the training or policies provided by Defendant Oliva, but this does not satisfy the standard for showing deliberate indifference.

Since mere negligence or inadvertence does not constitute deliberate indifference, the Court finds that there is no legally sufficient evidentiary basis for a reasonable jury to find for Plaintiff on this issue. Accordingly, the claims against Defendant Oliva should also be dismissed.

III.    **Qualified Immunity.**

With regard to Plaintiff's claims, the Defendants argue that they are entitled to qualified immunity. Qualified immunity protects government officials performing discretionary functions from individual liability under 42 U.S.C. § 1983 unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

> In evaluating a claim for qualified immunity, the court must first determine whether, considered in the light most favorable to the plaintiff, the facts alleged state the violation of a [statutory or] constitutional right. . . . If so, the court must go on to determine whether the [statutory or] constitutional right was clearly established at the time of injury. . . . If the answer to either of these questions is no, the defendant is entitled to qualified immunity.

*PeTA, People for the Ethical Treatment of Animals v. Rasmussen*, 298 F.3d 1198, 1207 (10th Cir. 2002) (citing *Saucier v. Katz*, 533 U.S. 194 (2001)).

Viewing the facts and the evidence in the record in a light most favorable to the Plaintiff, he has failed to demonstrate a genuine issue of material fact such that a reasonable jury could find in his favor concerning his allegations of a violation of a constitutionally protected right, and therefore, the individual Defendants in this case are entitled to qualified immunity. *See Siegert v. Gilley*, 500 U.S. 226, 233 (1991) (failure to make out a violation of a clearly established constitutional right is a failure to satisfy necessary threshold inquiry in determination of qualified immunity claim).

## <u>CONCLUSION</u>

Based upon the above analysis, and the entire record herein, it is **ORDERED** that Defendants' Motion for Summary Judgment [Filed June 6, 2006; Docket #48] is **granted**, and this case is dismissed in its entirety and against all Defendants, with prejudice.

-16-

It is further **ORDERED** that the Trial Preparation Conference scheduled for December 8, 2006, at 9:00 a.m., and the 3-day trial to the Court scheduled to commence on December 19, 2006, are both hereby **vacated.**

Dated at Denver, Colorado, this 22nd day of November, 2006.

BY THE COURT:

 s/ Michael E. Hegarty
Michael E. Hegarty
United States Magistrate Judge